NIMMONS, Judge.
This is an appeal from an order dismissing with prejudice plaintiff’s/appellant’s multi-count second amended complaint. We affirm in part and reverse in part.
ARA Services (ARA) was a corporation which was in the business of leasing (as lessor), servicing, maintaining and repairing coin-operated music, game and cigarette machines. Lantice and Ronnie Green were the principals of Lantice and Ronnie Green, Inc. (sometimes referred to herein as “the Green corporation”), which was the proprietor of two Putt Putt miniature golf courses in Jacksonville, one located on Beach Boulevard and one on Blanding Boulevard.
In June, 1979, ARA and the Green corporation entered into an agreement whereby it was agreed that ARA would install and service certain of its machines at the Beach Boulevard golf course with the parties sharing in the receipts from utilization of the machines. The parties entered into a similar agreement in February, 1980. And in April, 1980, they entered into a third agreement similar to the prior agreements except that the other Putt Putt course on Blanding Boulevard was added as another location for placement of the machines. Although the complaint purports to sue on the basis of all three agreements, it has become apparent from the record in this case and from the arguments presented at oral argument that the third agreement superseded the prior agreements.
In August, 1980, Southeastern Leisure Systems, Inc. (“Southeastern”) purchased the assets of ARA and received assignment of ARA’s outstanding contracts. Thereafter, Southeastern performed the duties and obligations of ARA under the subject agreement. The agreement provided that it was “freely assignable” by ARA and no issue has been raised regarding the right of Southeastern to enforce the agreement as if it were the original contracting party.
*114 On March 3, 1982, the Greens’ attorney contacted Southeastern and advised that the Putt Putt course on Beach Boulevard had been sold and demanded that Southeastern remove its machines by March 5 or they would be placed on the street. Southeastern filed the instant suit on March 4. A temporary restraining order was entered on March 5.
After the initial complaint was dismissed with leave to amend, Southeastern filed an amended complaint. The complaint was in five counts. Each count sought money damages from various defendants on various theories. Count I sought damages from the Green corporation on the basis of breach of contract. Count II claimed that the Green corporation was equitably es-topped to deny the enforceability of the above referred agreements. Count III claimed that the Greens, individually, were guilty of fraud in the inducement and sought damages against them. Count IV purported to allege a cause of action against the purchasers of the Beach Boulevard course, Hank Woodburn and Chip Lin-ville, for breach of the agreements on the basis that the agreements were binding upon the “successors and assigns” of the Green Corporation and on the basis that they had knowledge of the existence of the April, 1980, agreement when they purchased the course.[1] Count V purported to state a claim against the purchasers of the course on the basis of an alleged interference with an advantageous business relationship between Southeastern and the Green corporation. The amended complaint was dismissed for reasons mentioned below. The dismissal, however, was with leave to amend.
The plaintiff filed a second amended complaint which was similar to the preceding amended complaint but which purported to state additional facts. The trial court dismissed the second amended complaint, this time with prejudice, on the same grounds upon which the court had relied in dismissing the preceding complaint. The trial court stated that any rights held by plaintiff under the three agreements “are held as licensee, not as a lessee,” the agreements (entitled “location lease agreement”) contain no description of the space in which the machines were to be placed, and the agreements granted the plaintiff’s predecessor no possession or control over any space provided. The court went on to further state that the agreements, being licenses instead of leases, were not enforceable because they were not “licenses coupled with an interest” or “executed licenses.” The entire complaint was dismissed with prejudice.
We have examined the complaint and each count thereof to determine whether a cause of action is stated.[2] We find, not necessarily upon the grounds articulated by the trial judge, that Counts III, IV and V were properly dismissed for failure to state a cause of action. However, the trial court erred in dismissing Count I as it stated a cause of action against the Green corporation on the basis of a breach of the April, 1980, agreement. In view of this holding, the dismissal of Count II, which sets forth the claim that the Green corporation was estopped to deny the agreement’s enforceability, is moot. Further examination of Count I will demonstrate the need to reverse the dismissal of that count as it adequately stated a claim for damages against the Green corporation for breach of contract.
The Green corporation takes the position, as it did in the trial court, that it could terminate the agreement at will without liability because the agreement was not a lease of any premises and did not create a *115 license coupled with an interest. Such has no bearing on the issue of the liability, as between the contracting parties, for damages for breach of the agreement. Cf. Bodden v. Carbonell, 354 So.2d 927 (Fla. 2nd DCA 1978). For example, it matters not, contrary to the Green corporation’s contention, that the agreement did not specifically describe a certain location at the golf course premises where the machines would be placed.
We simply have a golf course proprietor agreeing with a supplier and operator of coin-operated machines essentially as follows: (1) certain such machines to be placed at the golf course premises with the parties dividing the revenues therefrom according to the terms of the contract; (2) the machine supplier to service and maintain the machines during the term of the contract; (3) a five-year term specifically provided in the contract; and (4) a liquidated damages clause. According to the allegations of the complaint, midway through the agreement the proprietor unceremoniously ordered the machine supplier to remove the forty-four machines from the premises within two days because the proprietor had decided to sell his business.
Assuming, as we must, the truth of these allegations, the proprietor is, of course, answerable in damages for breach of the agreement. The fact that the equipment supplier may not be able to enforce the agreement against the purchasers of the business, either because the agreement was a license instead of a lease, or otherwise, is unavailing to the breaching proprietor.
We have considered the arguments of Southeastern asserting error in the dismissal of Counts II through V and find such arguments unpersuasive. However, for the reasons discussed above, we hold that the trial court reversibly erred in dismissing Count I, and we reject the grounds, additional to those relied upon by the trial court, which Southeastern has urged on appeal as supportive of the court’s dismissal of Count I.
Therefore, the order dismissing the second amended complaint is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.
MILLS and SMITH, JJ., concur.

. It is apparent from the pleadings that the purchasers of the Beach Boulevard course did not agree to assume the obligations of the subject agreements. In fact, they made it clear to the Green corporation that they would not be interested in purchasing the course if it were encumbered with such agreements.

. No contention has been made by appellant that the trial court erred in not granting it leave to further amend.